## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHAWN MALONEY, | |
|                 Plaintiff, | |
| v. | |
| AQUENT, LLC,<br>501 Boylston Street, Third Floor<br>Boston, MA 02116 | Case No. |
|     Serve:<br>    The Corporation Company, Inc.<br>    112 SW 7th Street, Ste. 3c<br>    Topeka, KS 66603 | JURY TRIAL DEMANDED |
| and | |
| VOLKSWAGEN GROUP OF AMERICA,<br>INC. d.b.a. AUDI OF AMERICA, INC.<br>2200 Ferdinand Porsche Dr.<br>Herndon, VA 20171-6243 | |
|     Serve:<br>    Corporation Service Company<br>    100 Shockoe Slip, 2nd Floor<br>    Richmond, VA 23219-4100 | |
| and | |
| TAYLOR HEADLEY | |
| and | |
| MARY BERGER, | |
|                 Defendants. | |

**COMPLAINT**

COMES NOW plaintiff Shawn Maloney, by and through counsel, and for his Complaint against defendant Aquent, LLC; Volkswagen Group of America, Inc. d.b.a. Audi of America, Inc.; Taylor Headley and Mary Berger; states as follows:

## JURISDICTION AND VENUE

1. This action arises under Title VII, 42 U.S.C. § 2000e. Subject matter jurisdiction over Plaintiff's claims is based on 28 U.S.C. § 1331.

2. Subject matter jurisdiction over Plaintiff's state-law claim is conferred by 28 U.S.C. § 1367(a) because such claim is so related to Plaintiff's claim under Title VII, 42 U.S.C. § 2000e that it forms part of the same case or controversy.

3. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## ADMINISTRATIVE PROCEEDINGS

4. On or about June 4, 2020, Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). A copy of the charge is attached hereto as Exhibit A and is incorporated herein by reference.

5. On or about March 29, 2021, the EEOC provided the Plaintiff his Right-to-Sue Notice pursuant to Title VII. A copy of the said notice is attached hereto as Exhibit B and is incorporated herein by reference.

6. This action has been filed with this Court within 90 days of the Plaintiff's receipt of his Right-to-Sue notice. Plaintiff has therefore fully complied with all administrative prerequisites before filing this action.

## PARTIES

7. Plaintiff Shawn Maloney is a resident of the State of Kansas who worked as a Retail Digital Strategist (hereinafter "RDS") for Aquent, LLC. Plaintiff is an "employee" and "individual employed by an employer" as defined by 42 U.S.C. § 2000e(f) because he is "subject to the civil service laws of a State government, governmental agency or political subdivision."

8. Defendant Aquent, LLC, is limited liability company organized under the laws of the state of Delaware, with its principal place of business in Massachusetts. Defendant is an "employer" and "person" under 42 U.S.C. § 2000e(a)-(b) because it is a company that is engaged in an industry affecting commerce that has 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year. Defendant Aquent, LLC does business all over the country, including in the state of Kansas.

9. Defendant Volkswagen Group of America, Inc. is a corporation formed under the laws of Virginia and, at all times relevant to this Complaint, did business in the United States under the fictitious name Audi of America, Inc. Defendant Volkswagen Group of America, Inc. d.b.a. Audi of America, Inc. (hereinafter "Audi") does business all over the country, including in the state of Kansas.

10. Defendant Taylor Headley is an individual who, at all times relevant to this Complaint, was employed within the United States by Defendant Audi as Area 91 Sales Manager.

11. Defendant Mary Berger is an individual who, at all times relevant to this Complaint, was employed within the United States by Defendant Audi as Area 91 Director.

12. With respect to all allegations set forth herein, Defendants Taylor Headley and Mary Berger acted as agents of, and working within the course and scope of their employment by, Defendant Audi.

## GENERAL ALLEGATIONS

13. Plaintiff began working for Aquent, LLC, in May 2019 as an RDS. Plaintiff worked on Aquent's Audi account for two regional areas which included the states of Kansas, Missouri, Indiana, Illinois, Nebraska, Iowa, North Dakota, South Dakota, and Minnesota. In the last couple months of his employment with Aquent, Plaintiff was working from his home in Kansas due to the pandemic.

14. Plaintiff's team at Aquent consisted of three RDSs, one of whom was Erin Syron, the "team leader." John Jones was Aquent's National Audi Team Manager. Patricia Price was Aquent's Automotive Program Manager.

15. As part of his employment package, Plaintiff was provided an Audi vehicle to use for work.

16. For Aquent's Audi accounts, Plaintiff covered Areas 90B and Area 91, which together comprised 22 dealerships in the central region. In Area 91, Plaintiff dealt with Taylor Headley, the Area Sales Manager, and Mary Berger, the Area Director. Jennie Lafin was Audi's Regional Marketing Manager for the Central Region. Jeramie Westbay was Audi's National Retail Digital Manager.

17. Plaintiff's supervisors at Aquent gave him positive feedback and a positive performance evaluation in January 2020.

18. In late June 2019, Plaintiff was in Minneapolis, where he had one of his first in-person interactions with Taylor Headley of Area 91. Out of the blue, Headley told Plaintiff she

was having some issues at home with her husband. Headley's sharing of private marital information made him uncomfortable so he politely told her he was sorry and hoped things would work out for her before changing the subject.

19. In mid-July 2019, Plaintiff met with Headley for a meeting at an Audi dealership in Omaha. After they exchanged greetings and had small talk, she told him that things had not gotten better with her husband, that she believed he was cheating on her, and that she was considering divorce. Plaintiff expressed his sympathy and directed the conversation back to work. He believed the topic of conversation was private and was concerned it would lead her to share matters of a sexual nature with him. As such, the conversation made him uncomfortable.

20. Following that meeting, Plaintiff and Headley drove separately to the Audi dealership in Des Moines for another meeting. At the end of the second meeting, Plaintiff mentioned he was going to be back in Minneapolis the next week. In response, Headley asked if he would go out for drinks with her when he was in town. Considering what Headley had shared with Plaintiff regarding the state of her marriage, Plaintiff was concerned that the invitation was a proposition or a date, which again made him uncomfortable. He therefore declined politely.

21. In August 2019, Plaintiff attended a regional meeting in Chicago where he saw Headley for the first time since their Des Moines meeting in July. He said "hello," but Headley turned and walked away. Although her response seemed rude or as though she was angry, Plaintiff chalked this up to a bad day. In fact, Headley was rude with Plaintiff for the remainder of his employment with Aquent.

22. A few weeks later, around September 2019, Erin Syron contacted Plaintiff to tell him Headley was complaining about him. According to Syron, Headley apparently complained

to Syron, Jenni Lafin, and Mary Berger. The complaints were regarding the degree of communications with her about his activity with their mutual dealerships.

23. Headley never directly conveyed any concerns to Plaintiff. According to Syron, however, Headley's complaints were not letting up. It also became apparent that Headley was encouraging other female Audi employees to echo her complaints about Plaintiff. Syron advised Plaintiff to be extra cautious with his communications to Headley and any others representing Area 91.

24. At this time, Syron repeatedly assured Plaintiff that he was doing a great job and that she did not see there was anything else he could do.

25. Plaintiff had his first performance review in January of 2020. He was asked to present a PowerPoint to Syron and John Jones highlighting his dealer visit activity and accomplishments in his first six months of employment. At the conclusion of his presentation, Jones and Syron told him he was doing a great job and to keep up the great work in the field. They did not mention that there were any areas in need of improvement.

26. Following Plaintiff's performance evaluation, Headley continued to complain about him. Plaintiff was increasingly frustrated and stressed about the situation and discussed this with Syron. He told her that he did not understand the reasoning behind increased scrutiny of his job performance compared to other RDSs and that he wondered if it was due to his being the only male involved with Area 91 at his level. Plaintiff did not tell Syron about Headley's inappropriate discussions with him about her marriage and her invitation to get drinks because he was too uncomfortable to share the incidents with a female supervisor and hoped the situation would change on its own.

27. Syron said she had no idea why he was being singled out but suggested he continue to be "as nice as [he] can and do not be defensive," given that they were "Aquent's clients and supervisors." Syron again emphasized that Plaintiff's performance was great and said he did an "awesome job" at a recent dealer meeting.

28. After speaking with Syron regarding Headley's ongoing complaints, Plaintiff was extra cautious, but Headley and other female managers from Area 91 nonetheless continued to target him. So, Plaintiff asked Syron to get Jones involved. Syron refused Plaintiff's request to involve Jones, saying that she did not believe it was necessary because Jones was happy with his performance.

29. Plaintiff was still uncomfortable alerting Syron to his concern that he was the victim of a quid-pro-quo proposition because he was being singled out in retaliation for rebuffing Headley's proposition to go on a date. At first, he thought he could deal with the issue alone. When he realized he could not, he still was not ready to share the matter with a female manager.

30. When Headley continued treating Plaintiff negatively and he felt he could no longer take the treatment, he decided to contact Jones (his male supervisor) directly. On May 14, 2019, Plaintiff spoke with Jones on the phone and explained to him what had happened the previous summer with Headley and the continued retaliation. Plaintiff gave Jones numerous examples of the unequal scrutiny he was under following the incidents and explained it was getting worse. Jones responded that he was happy that Plaintiff contacted him and stated his "door was always open." He told Plaintiff that his performance was great and that he wished he had "five more RDSs just like [him]," and even that he "took more initiative than most of the other RDSs on the team."

31. Jones also offered that the bad treatment could be because Plaintiff is male and they are trying to show their dominance over him, as someone who is lower on the organization chart. Jones said something to the effect of, "females in the automotive industry like to do that." Jones then asked Plaintiff not to tell human resources he made this comment. Jones mentioned that he had dealt with similar issues with the Audi team, without elaborating.

32. Jones concluded the call, stating he would reach out to Jeramie Westbay at Audi National HQ for help to remedy the problem. Plaintiff reiterated that he felt his job was in jeopardy and that he wanted to make sure his concerns were addressed. Jones assured him that, as one of the top performers, he should not be concerned. Jones said he would call Plaintiff in a few days.

33. On May 20, 2019, Jones followed up with Plaintiff and told him that he had thought about the situation over the weekend and decided he should just keep doing the same work he had been doing. Jones said Plaintiff did not need to worry about losing his job as his job was secure and that Aquent—not Audi—made the employment decisions. He also repeated that Plaintiff's performance was great. Jones said he "had his back," and he would "go to bat" for him if the matter worsened.

34. Plaintiff reiterated to Jones that he was experiencing a great deal of stress and sleepless nights from the intimidating work climate and mentioned again that he believed the treatment was because he refused a date with Headley. Plaintiff asked Jones if he needed to contact anyone else about the retaliation problem and Jones responded that he did not. The conversation concluded with Jones suggesting Plaintiff take some time off because he had not used any of his vacation time.

35. Plaintiff did not hear anything else from Jones until one week later. On May 27, 2019, Jones and Patricia Price contacted Plaintiff to tell him he was being terminated. Jones said the reason for termination was Headley's and Berger's complaints about his job performance.

36. Plaintiff was shocked and again stated that he believed his treatment by Area 91 personnel was a consequence of his refusal to get drinks with Headley. He stated he was confused because there had been so many assurances that he was a strong performer and that his job was safe, among other things. He told Jones and Price that the termination was retribution for reporting Headley's treatment. Price told Plaintiff he was welcome to contact the Human Resources Department or the Legal Department if he believed his termination was unjust.

## COUNT I
### (against Defendant Aquent, LLC)
### 42 U.S.C. § 2000e-3 – Retaliation

37. Plaintiff realleges and incorporates by reference each and every averment of this Complaint as though fully set forth herein.

38. Defendant Aquent, LLC's actions during Plaintiff's employment amounted to retaliation under Title VII.

39. Plaintiff engaged in protected activity by complaining to Defendant Aquent, LLC about quid- pro-quo and hostile work environment sexual harassment.

40. Defendant Aquent, LLC retaliated against Plaintiff by terminating him because of his protected activity.

41. As a direct result of Defendant Aquent, LLC's unlawful retaliation, Plaintiff has suffered damages, including lost wages and emotional distress.


42. Defendant Aquent, LLC acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling Plaintiff to an award of punitive damages in an amount that will punish and deter Defendant Aquent, LLC and others from like conduct.

## COUNT II
### (against Defendants Audi Volkswagen Group of America, Inc. d.b.a. Audi of America, Inc., Taylor Headley and Mary Berger)
### Tortious Interference with Employment Relationship and Business Expectancies

43. Plaintiff realleges and incorporates by reference each and every averment of this Complaint as though fully set forth herein.

44. Plaintiff and Defendant Aquent, LLC entered into an employment contract and relationship with an expected term of at least two years from the date of hire. Plaintiff's employment with Aquent, LLC provided him an expected future economic benefit.

45. Defendants Audi, Headley and Berger knew of Plaintiff's employment contract and relationship with Defendant Aquent, LLC and interacted with Plaintiff on the basis of that contract and relationship.

46. Defendants Audi, Headley and Berger intentionally interfered with Plaintiff's employment contract and relationship by making disparaging, false and derogatory statements to Plaintiff's employer, Defendant Aquent, LLC, with the purpose of procuring the termination of Plaintiff's employment.

47. Defendants Audi, Headley and Berger acted with actual evil-mindedness and a specific intent to injure Plaintiff.

48. Except for the conduct of Defendants Audi, Headley and Berger, Plaintiff was reasonably certain to have continued his employment with Aquent, LLC and realized the expected future economic benefit of his employment.

49. As a direct and proximate result of the conduct of Defendants Audi, Headley and Berger, Plaintiff suffered damages including lost wages and employment benefits, loss of future employment and business expectancies, and emotional distress.

50. There was no justification for the conduct of Defendants Audi, Headley and Berger.

WHEREFORE, Plaintiff prays for judgment against Defendant on Counts I and II of his Complaint, for a finding that he has been retaliated against based on his complaints of negative treatment and retaliatory conduct against him in violation of Title VII and a finding that Defendants Audi, Headley and Berger tortiously interfered with Plaintiff's employment by Aquent, LLC; for an award of compensatory damages; for all equitable relief, including reinstatement or front pay in lieu of reinstatement; for punitive damages; for his costs expended; for reasonable attorneys' fees; and for such other and further relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests trial by jury of all issues triable by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

Respectfully submitted,

 /s/ Sarah A. Brown
Sarah A. Brown, KS #12130
Brown & Curry, LLC
1600 Genessee St., Suite 956
Kansas City, Missouri   64102
Telephone: 816.756.5458
Fax: 816.666.9596
sarah@brownandcurry.com

- 12 -

and

Anthony E. LaCroix, KS #24279
LaCroix Law Firm, LLC
1600 Genessee, Suite 956
Kansas City, Missouri 64102
Telephone: (816) 399-4380
Fax: (816) 399-4380
tony@lacroixlawkc.com

ATTORNEYS FOR PLAINTIFF